USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED:

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ISS FACILITY SERVICES, INC.,

                Plaintiff,

v.

FEDCAP REHABILITATION SERVICES, INC.,

                Defendant.

20-CV-6591 (RA)

MEMORANDUM
OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

    ISS Facility Services, Inc. ("ISS") brings this action against Fedcap Rehabilitation Services, Inc. ("Fedcap") for monetary relief following Fedcap's alleged breach of two contracts between the parties. Fedcap does not contest the breach, but instead asserts that ISS cannot maintain this lawsuit because it failed to satisfy a contractual condition precedent to filing suit. For the reasons articulated below, the Court agrees. The motion to dismiss is thus GRANTED.

## BACKGROUND

    The following facts are drawn from the Complaint, Dkt.1, and the documents attached thereto, namely, the Hughes Subcontract, Dkt. 1 Ex. A; the Cadman Subcontract, Dkt. 1 Ex. B; and the parties' emails from October 18 through February 7, 2020; Dkt. 1 Ex. C, E, and F. These facts are assumed to be true for purposes of resolving the motion. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

    ISS is a Texas-based subcontractor that provides facilities services. Compl. ¶ 1. Fedcap is a New York-based general contractor. *Id.* ¶ 2. Together, the parties entered the two contracts that form the basis of this dispute: the Cadman Subcontract and the Hughes Subcontract.

## I. The Cadman Subcontract

After the U.S. General Services Administration ("GSA") awarded Fedcap a contract in connection with the Duberstein Bankruptcy Courthouse and U.S. Post Office in Brooklyn, New York, *id*. ¶ 13, Fedcap engaged ISS to provide operation and maintenance on the project. *Id*. ¶¶ 14–15. On June 30, 2014, the parties entered into a subcontract, hereinafter known as the "Cadman Subcontract," which required Fedcap to pay ISS for services rendered within 45 days of ISS providing Fedcap an invoice. *See* Cadman Subcontract § 2.1. The initial term of the Cadman Subcontract was designated as July 1, 2014 until June 30, 2024. Compl. ¶ 16.

The Cadman Subcontract contains a provision governing disputes between the parties, which provides that:

> "If a dispute or misunderstanding arises between the parties . . . then every reasonable effort will be made to settle the dispute without resorting to litigation. The first level of attempted resolution will be between the managers at the level at which the dispute arises. If it cannot be resolved at that level within twenty business days, the issue shall be committed to writing by each party and submitted to the executive of each party with direct responsibility for administering this Subcontract . . . . If the executives cannot resolve the dispute within an additional twenty (20) business days, then the issue shall be further refined by them or their staffs and submitted to the President or Chief Executive Officer (CEO) of each party for resolution. Prior to a final decision at this level that does not finally resolve the issue; the presidents or CEOs shall discuss the issue and attempt final resolution."

Cadman Subcontract § 6.2.1. The dispute resolution provision further states that "[i]n the event that the dispute, claim or controversy has not been resolved through informal dispute resolution within sixty (60) days after a party requests mediation, the party seeking relief may file suit in a court of competent jurisdiction." *Id*. § 6.2.2.

## II. The Hughes Subcontract

Fedcap was also awarded a contract by the U.S. Federal Aviation Administration ("FAA") to provide services at the William J. Hughes Aviation Center in Atlantic City, New Jersey. *Id*. ¶ 6 ("The Hughes Contract"). Thereafter, Fedcap again engaged ISS as a subcontractor on the project to provide operation and maintenance, as it had on the Cadman Contract. *Id*. ¶ 8. On November 1, 2015, the parties

2

entered into a sub-contract, hereinafter known as the "Hughes Subcontract," which, like the Cadman Subcontract, required Fedcap to pay ISS for services rendered within 45 days of the receipt of an invoice. *See* Hughes Subcontract § 2.1. The initial term of the Hughes Subcontract was designated as November 1, 2015 until October 31, 2020. *Id*. ¶ 9

> The Hughes Subcontract similarly contains a dispute resolution provision, which provides that:
>
> "If a dispute or misunderstanding arises between the parties . . . then every reasonable effort will be made to settle the dispute without resorting to litigation. The first level of attempted resolution will be between the managers at the level at which the dispute arises. If it cannot be resolved at that level within ten (10) days, the issue shall be committed to writing by each party and submitted to the executive of each party with direct responsibility for administering this Subcontract . . . . If the executives cannot resolve the dispute within an additional ten (10) days, then the issue shall be further refined by them or their staffs and submitted to the President or Chief Executive Officer (CEO) of each party for resolution. Prior to a final decision at this level that does not finally resolve the issue; the presidents or CEOs shall discuss the issue and attempt final resolution."

Hughes Subcontract § 6.2.1. This dispute resolution provision further states that "[i]n the event that the dispute, claim or controversy has not been resolved through informal dispute resolution within forty-five (45) days after a party requests mediation, the party seeking relief may file suit in a court of competent jurisdiction." Hughes Subcontract § 6.2.2.

### III. The Breach of the Subcontracts

ISS alleges that it performed its obligations under both the Cadman and Hughes Subcontracts and submitted invoices to Fedcap in accordance with the Subcontracts. Compl. ¶¶ 21–22. Fedcap, however, became delinquent in payments, and ultimately failed to pay ISS over three million dollars. *Id*. ¶¶ 23, 25. To address this delinquency, in or around September 2019, ISS purports to have initiated the dispute resolution process mandated by the Subcontracts. *Id*. ¶¶ 24–25. On November 15, 2019 Fedcap's General Counsel, Kenneth Brezenoff, acknowledged in an email to ISS's General Counsel, John Sumner, that Fedcap owed over $3,000,000 to ISS. Dkt. 1 Ex. C at 1 ("The total of valid receivables exceeds $3MM."). Brezenoff and Sumner then engaged in a series of emails that, according to ISS,

3

resulted in a global resolution between the parties (the "Resolution") and—after Fedcap purportedly breached the Resolution—an amended resolution of the conflict (the "Amended Resolution").

## IV. The Resolution

In a December 9, 2019 email, ISS's General Counsel, Sumner, expressed frustration that ISS had not yet received from Fedcap "any proposal for paying the amounts admittedly owed by Fedcap to ISS" and asserted that ISS "need[s] a realistic and formal commitment ASAP for Fedcap paying that balance." Dkt. 1 Ex. E at 3. In response, Brezenoff, Fedcap's General Counsel, stated via email on December 9 that "Fedcap is prepared to commit to a monthly payment of $500,000 per month beginning in January to retire the amount owed by July, 2020." *Id*. at 2. In a December 20, 2019 email, Sumner proposed that Fedcap pay $200,000 on or before December 31, 2019, and the rest in monthly installments of $500,000 beginning in January 2020. *Id*. at 2. After Fedcap purportedly made a payment of $200,000 to ISS, Sumner emailed Brezenoff again on January 7 and asked, "Should I understand that [payment] as acceptance of the proposal I outlined below . . . ?" *Id*. (ellipses in original). ISS has not alleged whether Fedcap ever responded to this final email. ISS characterizes this series of emails as "a global resolution (the 'Resolution') of the outstanding invoices due under the Subcontracts." Compl. ¶¶ 28–29.

## V. The Amended Resolution

After Fedcap did not make payments to ISS in January and February of 2020, Sumner and Brezenoff purportedly had a telephone conversation concerning Fedcap's delinquency. *See* Dkt. 1 Ex. F at 1. On February 7, Sumner sent Brezenoff an email that appears to memorialize what was allegedly discussed in the call, including that:

- [Sumner] acknowledged receipt by ISS of the $200,000 payment by FedCap in December 2019.
- [Sumner and Brezenoff] agreed that the balance remaining due from FedCap to ISS is $3,000,000 . . . .

4

- [Brezenoff] acknowledged that FedCap had expected to be able to pay $500,000 per month over the 6 months (Jan to Jun) to resolve the balance . . . .
- [Brezenoff] stated FedCap's commitment to paying ISS the full balance, but [Brezenoff] did not offer a specific plan for doing so during [the] call.
- [Brezenoff] noted that FedCap is having similar conversations with a number of its other creditors.
- [Sumner] replied: (1) that it is important to ISS to have this debt fully paid by June 30th, 2020 at the latest; (2) that interest should apply on the unpaid balance; and (3) requested a proposal from [Brezenoff] on how/when FedCap intended to pay the balance.

*Id*. In that email, Sumner also noted that "[t]o date, [he had] received no follow-up from [Brezenoff] suggesting any plan from Fedcap for resolving this debt." *Id*. at 3. Sumner proposed that Fedcap provide ISS an affidavit confessing judgment under N.Y. C.P.L.R. § 3218 for $3,000,000. *Id*. at 3. Brezenoff responded to this email as follows: "Fedcap confirms the balance owed of $3MM and intends to retire the amount by June 30, 2020." *Id*. at 2. This response made no comment on the proposal that Fedcap confess judgment or the proposed payment plan. ISS characterizes Brezenoff's email as an "an amended resolution with ISS (the 'Amended Resolution')." Compl. ¶¶ 37–38.

## VI. The Instant Litigation

In the months following that correspondence, Fedcap paid ISS $500,000 of the $3,000,000 it owed ISS, but failed to pay the rest despite ISS's demands for payment. *Id*. ¶¶ 39–41. In response, ISS initiated the instant litigation on August 18, 2020. ISS alleges seven causes of action: (1) breach of the Subcontracts, (2) breach of the Resolution, (3) breach of the Amended Resolution, (4) account stated, (5) unjust enrichment, (6) quantum meruit, and (7) accord and satisfaction. On October 6, 2020, Fedcap filed a motion to dismiss all seven claims under Federal Rules of Civil Procedure 12(b)(1) and/or 12(b)(6). Dkt. 14. Fedcap asserts that because ISS did not comply with the dispute resolution provisions of the Subcontracts, it cannot maintain its suit for breach of the Subcontracts. It also asserts that ISS cannot sue for breach of either the Resolution or the Amended Resolution because neither is a legally binding contract. Finally, Fedcap argues that ISS's quasi-contractual claims—account stated, unjust

5

enrichment, quantum meruit, and accord and satisfaction—are not viable given the valid and enforceable written agreement between the parties that governs this dispute.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[1] The Court's "review is generally limited to the facts and allegations that are contained in the complaint," but the Court may also consider "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits." *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc*., 369 F.3d 212, 217 (2d Cir. 2004). When adjudicating a challenge to the sufficiency of the pleadings, the Court must accept as true all well-pled factual allegations and draw all reasonable inferences in favor of the plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## DISCUSSION[2]

### I. Breach of the Subcontracts

ISS contends that "Fedcap has breached the Subcontracts by failing to make payments to ISS as required by the Subcontracts" and that as a result, "ISS has been damaged in an amount of not less than $2,500,000.00, plus applicable contractual and statutory interest." Compl. ¶¶ 43–44. Fedcap does not dispute that a breach of the Subcontracts occurred; instead, it contends that ISS cannot maintain the instant litigation because it failed to comply with a contractual condition precedent to this lawsuit: completion of the dispute resolution process mandated by the Subcontracts. Def. Mem. at 6. Under these provisions, the parties may file a lawsuit only if their dispute has "not been resolved through

---

[1] Defendant has moved to dismiss the complaint under both Rule 12(b)(1) and Rule 12(b)(6). Because the Court grants the motion to dismiss pursuant to Rule 12(b)(6), it need not consider Defendant's 12(b)(1) argument. *See Indig v. Pomona*, 18-CV-10204 (VB), 2019 U.S. Dist. LEXIS 200934, 2019 WL 6173425, at *1 n.1 (S.D.N.Y. Nov. 19, 2019).

[2] The Court will consider ISS's claims under New York law, as both Subcontracts provide that New York law controls any disputes that arise under them. *See* Compl. ¶ 12 (citing Hughes Subcontract § 11.5); *id*. ¶ 19 (citing Cadman Subcontract § 11.5).

informal dispute resolution within forty-five (45) days after a party requests mediation" under the Hughes Subcontract or "sixty (60) days after a party requests mediation" under the Cadman Subcontract. Hughes Subcontract § 6.2.2; Cadman Subcontract § 6.2.2. Because the Complaint alleges only that the parties "initiated" the dispute resolution process, Fedcap asserts that a condition precedent to this litigation has not been satisfied, and dismissal is warranted. *See* Def. Mem. at 6.[3]

The Court agrees with Fedcap. Even when viewing the pleadings and the exhibits attached thereto in the light most favorable to the plaintiff, ISS has not plausibly alleged that the parties complied with all the Subcontracts' dispute resolution provisions, and this matter must therefore be dismissed for failure to comply with a contractual condition precedent. Other judges in this district have reached the same conclusion on similar facts. In *Merchant House Inc. v. American Steamship Owners Mutual Protection & Indemnity Association, Inc.*, for example, the court granted a motion to dismiss a breach of contract action upon concluding that the plaintiff had failed to plead that it complied with a provision of the contract requiring it to pursue dispute resolution before commencing litigation. *See* 12-CV-6982 (RJS), 2013 U.S. Dist. LEXIS 91259, 2013 WL 3270331, at *1–4 (S.D.N.Y. May 31, 2013). As Judge Sullivan noted in *Merchant House*, a plaintiff "cannot escape the fact that it 'chose, with its business eyes open, to accept the terms, specifications and risk of the . . . contract, including the [dispute resolution] clause.'" *Id*. at *4 (citing *Westinghouse Elec. Corp. v. N.Y. City Transit Auth.,* 623 N.E.2d 531, 534 (N.Y. 1993)) (alterations in original). In *Duane Reade, Inc. v. St. Paul Fire & Marine Insurance Company*, Judge Rakoff similarly dismissed a breach of contract action upon concluding that the plaintiff had failed to comply with a contractual provision requiring it to present proof of loss before bringing suit. *See* 261 F. Supp. 2d 293, 294–95 (S.D.N.Y. 2003). ISS is likewise bound by the dispute resolution

---

[3] Fedcap has also submitted a declaration by its General Counsel, Brezenoff, in which he avers that the CEOs of the two companies never met to discuss this conflict, as the dispute resolution provisions demand. *See* Dkt. 16 ("Brenzeoff Decl.") at ¶ 3. As Fedcap rightly notes, however, this Court may only consider that declaration in making its ruling if it interprets Fedcap's motion to dismiss as a 12(b)(1) motion rather than a 12(b)(6) motion. Because the Court analyzes this motion only under Rule 12(b)(6), the Court will not rely in the Brezenoff Declaration in deciding the instant motion.

clauses in the Cadman and Hughes Subcontracts, and because it is implausible based on the Complaint (and the documents attached and incorporated thereto) to conclude that ISS complied with these contractual provisions, this action must be dismissed.

ISS seems to concede that it did not complete the dispute resolution process required by the Subcontracts. Instead, it argues that the process need only be completed if the parties failed to reach a resolution, while here, they resolved the conflict between themselves. Pl. Mem. at 4 ("The CEOs are only required to meet if 'the executives cannot resolve the dispute [. . .] .' Here, appropriately, the Complaint alleges that the dispute was resolved." (internal citations omitted)). This argument is plainly belied by pleadings and the exhibits attached thereto. According to the Complaint, a dispute arose between the parties when Fedcap failed to pay ISS for services provided, in violation of the Subcontracts. *See* Compl. ¶¶ 21, 23. Although the exhibits attached to the Complaint show that parties attempted to resolve this dispute internally, it appears based on these exhibits that a definitive agreement was never reached. *See* Dkt. 1 Ex. C, E–F; *see also infra*. Accordingly, the only reasonable conclusion the Court can draw from these pleadings is that a contractual dispute does in fact still exist between the parties and that a condition precedent has thus not been met.

The first cause of action is accordingly dismissed.

## II. Breach of the Resolution and Amended Resolution

ISS has also brought claims for breach of the "Resolution," Compl. ¶¶ 45–47 ("Fedcap has breached the Resolution Agreement by failing to make payments to ISS as required by the Resolution Agreement, namely by failing to make payment of $500,000.00 per month commencing in January 2020 and continuing through June 2020") and the "Amended Resolution," *id*. ("Fedcap has breached the Amended Resolution by failing to pay the amount due from Fedcap to ISS, namely the full amount of $3,000,000.00 by June 30, 2020, as agreed to by Fedcap in the Amended Resolution."). Fedcap responds

8

to this claim by asserting that neither the Resolution nor the Amended Resolution are enforceable contracts, and that their breach is not actionable. Def. Mem. 8–9. The Court agrees.

To state a claim for breach of contract under New York law, a plaintiff must allege "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996). "An exchange of emails may constitute an enforceable agreement if the writings include all of the agreement's essential terms, including the fee, or other cost, involved." *Kasowitz, Benson, Torres & Friedman, LLP v. Reade*, 98 A.D.3d 403, 404 (N.Y. App. Div. 2012), *aff'd*, 987 N.E.2d 631 (N.Y. 2013); *see also Brighton Inv., Ltd. v. Har-ZVI*, 88 A.D.3d 1220, 1222 (N.Y. App. Div. 2011). "[F]or an acceptance to be effective, it must comply with the terms of the offer and be clear, unambiguous and unequivocal." *King v. King*, 208 A.D.2d 1143, 1143–44 (N.Y. App. Div. 1994); *see also Kolchins v. Evolution Mkts., Inc.*, 96 N.E.3d 784, 786–89 (N.Y. 2018) (finding the plaintiff's statement "I accept. pls [*sic*] send contract." in response to an email setting out the terms of an employment contract to be a valid acceptance of the defendant's offer because it "sufficiently evince[d] an objective manifestation of an intent to be bound for purposes of surviving a motion to dismiss").

The Court's decision in *Sullivan v. Ruvoldt* is instructive here, as Defendant rightly notes. *See* 16-CV-583 (ER), 2017 U.S. Dist. LEXIS 44544, 2017 WL 1157150 (S.D.N.Y. Mar. 24, 2017). In that case, two former law partners exchanged a series of emails discussing how to dissolve their partnership. *Id*. at *1–2. In these emails, the defendant sent the plaintiff five proposed steps that the parties could take to sever the plaintiff from the partnership, then requested that the plaintiff "email back that this is agreeable." *Id*. at *1, *6. The plaintiff later responded to a different email, but never wrote back in a way that demonstrated that he was accepting the five-step proposition the defendant had outlined. *Id*. The Court concluded that the emails did not form an enforceable contract because, while there was an offer, there was no acceptance of that offer. *Id*. at *6. Although the plaintiff continued communicating

9

with the defendant after the offer was made, his emails contained "no statement that unambiguously constitute[d] assent to [defendant's] proposal." *Id*.

On December 9, 2019, Brezenoff emailed Sumner that "Fedcap [wa]s prepared to commit to a monthly payment of $500,000 per month beginning in January to retire the amount owed by July, 2020." Dkt. 1 Ex. E at 2. Brezenoff's language—"prepared to commit to," rather than "commits to"—suggests that ISS may not have intended for this language to form a contractual offer. In any event, Sumner responded in a December 20, 2019 email, not with an acceptance, but with a counteroffer: that Fedcap pay $200,000 on or before December 31, 2019, and the rest in monthly installments of $500,000 beginning in January 2020. *Id*. at 2. *See International Paper Co. v. Suwyn*, 966 F. Supp. 246, 254 (S.D.N.Y. 1997) ("A reply to an offer which purports to accept it but is conditional on the offeror's assent to terms additional to or different from those offered is not an acceptance but is a counter-offer." (quoting Restatement 2d of Contracts § 59)). Like in *Sullivan*, ISS has not adequately pled that Brezenoff or anyone else from Fedcap accepted this counteroffer. And although Fedcap purportedly made a payment of $200,000 following this counteroffer, the exhibits attached to the Complaint leave unanswered the question as to whether ISS understood it to be an acceptance of the counteroffer. Indeed, after Fedcap made the payment, Sumner asked Brezenoff "Should I understand that [payment] as acceptance of the proposal I outlined below . . .?" *Id*. Brezenoff never responded.

Similarly, ISS has not pled that its February offer—identified by ISS as the "Amended Resolution"—was accepted by Fedcap. Like the defendant in *Sullivan*, after Sumner sent Brezenoff proposed steps to resolve the conflict between the parties, Brezenoff responded, but said nothing definitive to indicate he was accepting the proposal, only that "Fedcap confirms the balance owed of $3MM and intends to retire the amount by June 30, 2020." Dkt. 1 Ex. F at 3 (email dated February 7).

In sum, these emails demonstrate offers, counteroffers, and statements of obligation. But these email communications make implausible the allegation "that there was a meeting of the minds between

10

[the parties] over sufficiently definite terms to constitute an enforceable contract" here. *Hudson & Broad, Inc. v. J.C. Penney Corp.*, 553 F. App'x 37, 39 (2d Cir. 2014). The Resolution and Amended Resolution are thus not enforceable contracts.

The second and third causes of action are accordingly dismissed.

### III. Remaining Claims

In the alternative, ISS brings claims of unjust enrichment and quantum meruit, on the grounds that it performed a valuable service for Fedcap and was not paid for that service. Compl. ¶¶ 56–63. It also brings a claim for account stated, asserting that Fedcap received, accepted, and acknowledged the accuracy of ISS's invoices, but failed to pay them in their entirety. *Id*. ¶¶ 51–55. These claims cannot survive a motion to dismiss because New York law precludes a plaintiff from recovering under any of these theories so long as a valid and enforceable written contract governing the subject matter exists between the parties. *See Lexington Ins. Co. v. Tokio Marine & Nichido Fire Ins. Co.*, 11-CV-391 (DAB), 2011 U.S. Dist. LEXIS 100801, 2011 WL 3962641, at *3 (S.D.N.Y. Sept. 7, 2011) ("[W]hen a 'valid and enforceable' written contract governs the subject matter in dispute, a plaintiff may not recover under a theory of unjust enrichment."); *A. Montilli Plumbing & Heating Corp. v. Valentino*, 90 A.D.3d 961, 962 (N.Y. App. Div. 2011) (dismissing a "cause of action for an account stated [as] simply an alternative theory of liability to recover the same damages allegedly sustained as a result of the breach of contract"); *Zito v. Fischbein, Badillo, Wagner, & Harding*, 35 A.D.3d 306, 307 (N.Y. App. Div. 2006) ("[G]iven that an enforceable oral contract exists, covering the matter of plaintiff's compensation, recovery for those services in quantum meruit is precluded.").[4]

---

[4] ISS also brings a claim for accord and satisfaction, Compl. ¶¶ 64–68, but seems to have abandoned that claim in its briefing on the instant motion. *See State St. Banking Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 172 (2d Cir. 2004) ("When a party fails adequately to present arguments in [its] brief, we consider those arguments abandoned."). Even if the claim were not abandoned, it would fail on the merits, for accord and satisfaction is an affirmative defense and does not form the basis for an independent cause of action under New York law. *Kaufman v. Coplan*, 2020 N.Y. Misc. LEXIS 406, 2020 WL 434338, at *3 (N.Y. Sup. Ct. Jan. 28, 2020).

11

ISS counters that because Fedcap has not conceded that an enforceable contract exists between the parties, ISS should be permitted to pursue its quasi-contractual claims. It cites *Trend & Style Asia HK Co. v. Pacific Worldwide, Inc.*, 14-CV-9992 (SAS), 2015 U.S. Dist. LEXIS 89926, 2015 WL 4190746 (S.D.N.Y July 10, 2015), in which Judge Scheindlin refused to dismiss the plaintiff's quasi-contractual claims, but held that if the defendants "admit[ted] that there was a contract even while denying liability under it, then [she would] dismiss as duplicative the quasi-contract allegations." *Id*. at *6. Here, Fedcap has explicitly acknowledged that the parties are bound by the written Subcontracts. Reply at 5. And even if it had not done so, that the parties are bound by the Subcontracts is a fact that inherently underlies Fedcap's argument; if the parties were not bound by the Subcontracts, then ISS would not be bound by the dispute resolution provisions as Fedcap claims it is. *See* Def. Mem. at 6–8. *Trend & Style* is thus inapposite. Because valid and enforceable contracts govern this dispute, ISS's unjust enrichment, quantum meruit, and account stated claims must be dismissed.

ISS also contends that if the Resolution and Amended Resolution are not binding contracts, then it should be permitted to pursue quasi-contract claims for violations of those agreements. But the unjust enrichment, quantum meruit, and account stated claims are all clearly based in violation of the Subcontracts, not the Resolutions. ISS's unjust enrichment and quantum meruit claims allege that ISS performed a valuable service for Fedcap and was not paid for that service. Compl. ¶¶ 56–63. ISS's account stated claim asserts that Fedcap received, accepted, and acknowledged the accuracy of ISS's invoices, but failed to pay them in their entirety. *Id*. ¶¶ 51–55. The services ISS provided for Fedcap—and the invoices stemming from those services—were completed before the Resolution or the Amended Resolution were even contemplated. ISS's argument thus fails.

The fourth, fifth, sixth, and seventh causes of action are accordingly dismissed.

## CONCLUSION

For the foregoing reasons, the motion to dismiss is granted, albeit without prejudice. The Clerk of Court is respectfully directed to terminate the motion pending at docket entry 14 and to close this case.

SO ORDERED.

Dated: July 2, 2021
        New York, New York

                                          RONNIE ABRAMS
                                          United States District Judge